# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **MAGGIE LAWRENCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **NO. 3:22-cv-00680** |
| | ) | |
| **METROPOLITAN GOVERNMENT OF** | ) | **JUDGE CAMPBELL** |
| **NASHVILLE AND DAVIDSON** | ) | **MAGISTRATE JUDGE HOLMES** |
| **COUNTY, TENNESSEE acting by and** | ) | |
| **through THE NASHVILLE FIRE** | ) | |
| **DEPARTMENT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the Court is a motion for summary judgment filed by Defendant Metropolitan Government of Nashville and Davidson County, Tennessee acting by and through the Nashville Fire Department ("Metro"). (Doc. No. 23). Plaintiff Maggie Lawrence ("Lawrence") filed a response in opposition (Doc. No. 26) and Metro filed a reply (Doc. No. 28). For the reasons discussed below, the motion will be **DENIED**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Lawrence, a 66-year-old woman, started working at the Nashville Fire Department in 1992. (Doc. No. 26-1 at 11:5-10). Lawrence holds bachelor's and master's degrees, and is a Certified Fire Inspector, Certified Fire Investigator, Certified Fire and Public Educator, and Certified Fire and Bomb Explosion Instructor. (Doc. No. 26 at 12). In 2016, Lawrence was promoted to Deputy Fire Marshal, which is directly under the Fire Marsal position. (*Id.* at 11:14-15). After former Fire Marshal Al Thomas ("Thomas") was terminated, Lawrence oversaw the day-to-day operations of the Fire

Marshal's office. (*Id.* at 14). Lawrence wanted to be Fire Marshal since she started working at the Fire Marshal's office in 1992. (Doc. No. 23-7 at PageID # 317).

Lawrence Hutchison ("Hutchison"), a 46-year-old man, started working in the Fire Marshal's office in October 2020. (Hutchison Deposition, Doc. No. 26-4 at PageID # 641). After Thomas was terminated, Timothy Henderson ("Henderson"), Deputy Director Chief of the Nashville Fire Department, recommended Hutchison for the Fire Marshal position. (Doc. No. 26 at 4). On January 27, 2021, William Swann ("Swann"), Director Chief of the Nashville Fire Department, informed Lawrence that Hutchison was going to be the new Fire Marshal. (Doc. No. 27 ¶ 1; Hutchison Deposition, Doc. No. 26-4 at PageID # 639). Lawrence contends that Metro was required to post publicly the Fire Marshal position before appointing a new Fire Marshal. (Doc. No. 23-7 at PageID # 304-305). The Fire Marshal position was not posted. (*Id.*).

Swann informed Lawrence that he chose Hutchison as the Fire Marshal instead of her because he needed a Fire Marshal that would be there "for the next four to six years" and that it "would not be smart" to appoint a Fire Marshal who would not be there "but for the next few years." (Doc. No. 35 ¶¶ 3, 4). Lawrence recorded the meeting. (Doc. No. 23-7 at PageID # 304). During the meeting, Swann instructed Lawrence to not speak out about his decision to promote Hutchison as Fire Marshal and reminded Lawrence that the former Fire Marshal had been terminated for talking about the department. (*Id.*). Specifically, Swann told Lawrence "if you go outside running your mouth, it's going to get back to me." (*Id.*). Lawrence was subsequently interviewed by a local news network and shared the recording. (Doc. No. 26-1 at PageID # 310). Swann learned about the recording and suspended Lawrence. (*Id.* at PageID # 311).

Before October of 2020, Hutchison worked as a first level supervisor in a different department, and Lawrence was instructed to train Hutchison on the Fire Marshal position. (Doc. No. 26 at 1; Doc.

2

Case 3:22-cv-00680    Document 43    Filed 03/27/24    Page 2 of 14 PageID #: 898

No. 35 ¶ 8). Before Hutchison was appointed as Fire Marshal, Lawrence had never been written up or received a negative performance review. (Doc. No. 35 ¶ 6). After Hutchison became Fire Marshal, he placed Lawrence on a Performance Improvement Plan based, in part, on his understanding that Lawrence had been on a previous Performance Improvement Plan and had not met expectations outlined in that plan. (Doc. No. 23-9 at PageID # 334).

Lawrence filed this action against Metro on September 2, 2022, alleging claims of sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). (Doc. No. 1). On August 30, 2023, Metro filed the pending motion seeking summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment movant has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III.    ANALYSIS

### A.  Affirmative Defense – Statute of Limitations

Metro argues Lawrence's discrimination claims fail as a matter of law because they are time-barred. The statute of limitations, like exhaustion of administrative remedies, is an affirmative defense. Fed. R. Civ. P. 8(c); *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). When a party seeks judgment as a matter of law on a statute of limitations, the Court must decide two questions: (1) whether the statute of limitations has run and (2) whether there exists a genuine issue of material fact as to when the plaintiff's cause of action accrued. *Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001). As the party invoking the statute of limitations as an affirmative defense, Metro has the burden to prove that the statute of limitations bars Lawrence's discrimination claims and that no genuine issue of material fact exists as to when the claims accrued. *Id*.

Here, the parties appear to agree that the triggering date for filing a charge of discrimination runs from when the plaintiff learned of the employment action at issue. *Amini v. Oberlin Coll.*, 259 F.3d 493, 499 (6th Cir. 2001) (holding the limitations period "must run from time the employment action at issue is communicated to the plaintiff").[1] However, Metro relies solely on Lawrence's allegations in the complaint to show that the alleged discriminatory action was communicated to

---

[1]    "Title VII requires that administrative charges be filed with 300 days of the discriminatory act in deferral states like Tennessee." *McQuail v. Tennessee Tech. Univ.*, 69 F. Supp. 3d 701, 712 (M.D. Tenn. 2014) (citing 42 U.S.C. § 2000e–5(e)).

4

Lawrence on or about October 5, 2020. (Doc. No. 24 at 2-3 (citing Complaint, Doc. No. 1 ¶¶ 24-36); Doc. No. 27 ¶¶ 1-3 (citing Complaint, Doc. No. 1 ¶¶ 24-36)). Allegations in the complaint are insufficient to carry Metro's burden of proof as the party moving for summary judgment. Fed. R. Civ. P. 56; *See also Hicks v. City of Millersville*, No. 3:21-CV-00837, 2023 WL 322447, at *2 (M.D. Tenn. Jan. 19, 2023) (internal citations omitted) ("[N]one of the materials on which the City relies is competent evidence at summary judgment. Specifically, the City cites only Hicks's unverified complaint…to support its statement of undisputed material facts… It is well established that unsworn factual allegations are not evidence that can be considered at summary judgment.").

Because Metro has failed to produce evidence demonstrating when the employment action at issue was communicated to Lawrence and the absence of a material dispute as to that fact, summary judgment will not be granted on Metro's statute of limitations affirmative defense.

## B. Sex and Age Discrimination – Failure to Promote

As noted above, Lawrence brings discrimination claims under Title VII and the ADEA. A plaintiff may rely on either direct or circumstantial evidence to establish these claims. *See Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599 (6th Cir. 2019); *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Here, Lawrence relies on circumstantial evidence to support her claims. Accordingly, to determine whether summary judgment is appropriate, the court will "apply the three-part burden-shifting framework developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981)[.]" *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775–76 (6th Cir. 2016).

Under this familiar burden-shifting framework, "the plaintiff bears the initial burden of establishing a *prima facie* case." *Id*. at 776. If the plaintiff establishes a *prima facie* case, the burden

shifts to the defendant to "clearly set forth, through the introduction of admissible evidence, the reasons for the [adverse action]." *Burdine*, 450 U.S. at 255. "An articulation not admitted into evidence will not suffice." *Id*. at n.9. If the defendant meets its burden of production, the plaintiff must demonstrate that the proffered reason was not the true reason for the employment decision by persuading the court that a discriminatory reason more likely motivated the employer or by showing that the employer's proffered explanation is unworthy of credence. *See id*. at 256 (citing *McDonnell Douglas*, 411 U.S., at 804–805).

As noted above, Metro, as the party bringing the summary judgment motion, has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). Metro may satisfy its burden by presenting affirmative evidence that negates an element of the Lawrence's claims or by demonstrating an absence of evidence to support her case. *See id.* Here, Metro argues Lawrence cannot establish all of the essential elements of her *prima facie* case or pretext. Metro attempts to satisfy its burden as the moving party by demonstrating an absence of evidence. The Court will address Metro's arguments in turn.

    1.  *Prima Facie* Case of Discrimination

To establish a *prima facie* case of discrimination under Title VII and the ADEA based on a failure to promote, Lawrence must show: (1) she is a member of a protected class; (2) she applied and was qualified for the promotion; (3) she was considered for and denied the promotion; and (4) another employee with similar qualifications who was not a member of his protected class received the promotion. *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. In its motion for summary judgment, Metro argues Lawrence cannot satisfy the elements of her prima

facie case because she cannot show that she had the qualifications for the Fire Marshal position or that she possessed "similar qualifications" to Hutchison, the employee who was selected for the position. (Doc. No. 24 at 3-8).[2]

### i.    Qualified For the Position

Metro argues Lawrence cannot prove that she was qualified for the Fire Marshal position because she was not meeting expectations in her role as Deputy Fire Marshal. Specifically, Metro asserts that "Plaintiff's performance made it clear that she was simply not capable of taking on such an important role." (Doc. No. 24 at 4-5). In support of this argument, Metro argues that before Hutchison was appointed Fire Marshal, the Fire Marshal's Department consistently underperformed and the former Fire Marshal reported that he found it "difficult to find tasks which [Lawrence] could competently complete" and "that he did not have any confidence in [Lawrence]." (Doc. No. 24 at 4). Metro also contends that Hutchison "exhibited exceptional leadership abilities" and successfully implemented programs. (*Id.* at 6). Metro's foregoing argument relies on the same conduct it proffers as its legitimate, nondiscriminatory reason for not promoting Lawrence. (*See* Doc. No. 24 at 6 (nondiscriminatory reasons for failing to promote Lawrence were her work performance and Hutchison's superior qualifications)). However, "a court may not consider the employer's alleged

---

[2]    Metro also challenges Lawrence's ability to show that age was the reason for her non-selection. (Doc. No. 24 at 8-9). Additionally, Metro argues Lawrence cannot establish causation for her age discrimination claim because she has alleged multiple discriminatory motives for her failure to promote claims. (Doc. No. 24 at 8-9). This argument is premised on a misunderstanding of Sixth Circuit authority. *Moat v. Metro. Gov't of Nashville*, No. 3:21-CV-00807, 2023 WL 4035909, at *8 (M.D. Tenn. June 15, 2023) (internal citation omitted) ("Citing *Pelcha*, the defendant argues that the 'mixed motive' theory of recovery applicable to actions under Title VII does not apply to ADEA claims and that, because the plaintiff purports to have direct evidence of disability discrimination, he cannot also pursue his age discrimination claims. The defendant, however, appears to be confusing 'but-for' causation with the 'sole cause' standard that applies to claims brought under § 504 of the Rehabilitation Act. The Sixth Circuit has stated that the 'sole-cause standard in the end is a creature of the Rehabilitation Act, and that is where we should leave it.' *Pelcha* admittedly contains some confusing language. Insofar as *Pelcha* might be construed as interpreting 'but for' causation to be equivalent to 'sole cause,' the court declines to adopt such a reading, as *Pelcha* did not squarely reach that conclusion, and, if it had, it would appear to be inconsistent with Sixth Circuit opinions both preceding and following *Pelcha*.").

nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003); *see also Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 814 (6th Cir. 2011) ("this careful distinction is especially necessary in cases such as this one, where the employer asserts as its nondiscriminatory reason for failing to promote the plaintiff that it chose to hire a candidate it considered more qualified.").

Additionally, Lawrence points to evidence that she was qualified for the Fire Marshal position, including that she was the Deputy Fire Marshal for nearly 6 years; oversaw the day-to-day operations of the Fire Marshal's office; and was instructed to train Hutchison on the Fire Marshal position. (Doc. No. 26 at 11-12). Hutchison also testified that he believed Lawrence was qualified for the Fire Marshal position. (Hutchison Deposition, Doc. No. 26-4 at PageID # 653). Thus, Metro's challenge of Lawrence's proof as to this element fails.

       ii.    *Qualifications of Employee Selected for the Position*

Metro also argues Lawrence cannot prove that she possessed "similar qualifications" to Hutchison, as required for the fourth element of the indirect-evidence *prima facie* case. *See Provenzano*, 663 F.3d at 814 ("[Plaintiff] is not required to establish that she and [the employee who received the promotion/position] had the exact same qualifications."). To show the absence of evidence for this element, Metro points to Henderson's deposition testimony explaining why he recommended Hutchison for the Fire Marshal position: "his actions that he had demonstrated at the fire training academy, his exceptional leadership abilities, his ability to develop and implement programs at the academy." (Doc. No. 24 at 6; Doc. No. 27 ¶¶ 15-16). However, the foregoing testimony does not show that Lawrence lacked similar qualifications to Hutchison. Indeed, Henderson testified as much: "You can be qualified just because you qualify from time of service or position you may be holding or whatever it may be. But being able to lead, and manage, and drive the division in

a new direction is based on capabilities." (Hutchison Deposition, Doc. No. 26-2 at PageID # 532; *id*. ("Well, you can be qualified for several things. Capabilities is a whole different issue.")). Nor does Henderson's testimony show Lawrence cannot prove that she possessed "similar qualifications" to Hutchison. Indeed, Lawrence points to evidence that she was qualified for the position of Fire Marshal and was instructed to train Hutchison in his role as Fire Marshal after he was appointed. (Doc. No. 35 ¶ 8; Doc. No. 26 at 11-12). Hutchison also testified that he believed Lawrence was qualified to be Fire Marshal. (Hutchison Deposition, Doc. No. 26-4 at PageID # 653). Accordingly, Metro has failed to demonstrate the absence of a genuine dispute as to whether Lawrence possessed similar qualifications to Hutchison.

　　2.　Legitimate, Non-discriminatory Reason

"Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant, who must 'rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Levine v. DeJoy*, 64 F.4th 789, 797 (6th Cir. 2023) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). "In satisfying that burden, '[t]he defendant need not persuade the court that it was actually motivated by the proffered reasons.' Instead, '[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Levine v. DeJoy*, 64 F.4th 789, 797 (6th Cir. 2023) (internal citations omitted).

Here, Metro must set forth, through the introduction of admissible evidence, the reasons for not promoting Lawrence. Metro argues that the "stark contrast between Plaintiff and Mr. Hutchison in their work performance and the fact that Mr. Hutchison had shown excellent leadership capacity

9

as well as an ability to implement successful programs" are legitimate, non-discriminatory reasons for selecting Hutchison as the Fire Marshal. (Doc. No. 24 at 6). Metro also asserts that Lawrence "needed to make more of an effort to review data from the State Fire Marshal and to report updates to the Fire Marshal" and demonstrated "an inability to effectively lead and manage her staff" while Hutchison "exhibited exceptional leadership abilities" and "an ability to develop and implement successful programs." (Doc. No. 24 at 6).

The Sixth Circuit has recognized that hiring a more qualified candidate is a legitimate, non-discriminatory reason. *Hammond v. Sysco Corp.*, No. 23-5385, 2023 WL 8847365, at \*6 (6th Cir. 2023) (internal citation omitted). As Metro has set forth a legitimate, nondiscriminatory reason for failing to promote Lawrence, the burden shifts back to Lawrence to demonstrate that this legitimate, nondiscriminatory reason was pretext. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. at 248.

3.  Pretext

An employee can show pretext "by offering evidence that (1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) (internal citation omitted).

Here, Lawrence provides evidence that Henderson was aware that Thomas wanted Lawrence to become the Fire Marshal and lobbied for her to receive the position. (*Id.*) Lawrence also points to Henderson's testimony that he did not recommend Lawrence for the Fire Marshal position because she was under a Performance Improvement Plan initiated by former Fire Marshal Al Thomas and based on Thomas's purported concerns with Lawrence's ability to lead. (Doc. No. 26 at 13). However, Lawrence provides evidence that she was not under any Performance Improvement Plan from Thomas. (Doc. No. 26 at 14-15).

Lawrence also provides evidence that Swann informed her that Hutchison was selected over her because he needed a Fire Marshal that would be there "for the next four to six years" and that it "would not be smart" to appoint a Fire Marshal who would not be there "but for the next few years." (Doc. No. 35 ¶¶ 3, 4).

Additionally, Lawrence points to ample evidence showing that she is arguably more qualified for the Fire Marshal position than Hutchison. "[W]hen qualifications evidence is all (or nearly all) that a plaintiff proffers to show pretext, the evidence must be of sufficient significance itself to call into question the honesty of the employer's explanation" for its hiring decision." *Levine*, 64 F.4th at 798 (internal citation omitted). "If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate—something employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture." *Id.* (internal citations omitted). Accordingly, "the question is whether [Lawrence] has offered evidence sufficient for a reasonable juror to 'conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job.'" *Id.*

The Court finds that Lawrence has done so. Lawrence submitted evidence that she has worked in the Fire Marshal's office for over 30 years, holds bachelor's and master's degrees, is a Certified Fire Inspector, Certified Fire Investigator, Certified Fire and Public Educator, and a Certified Fire and Bomb Explosion Instructor. (Doc. No. 26 at 12). Lawrence also points to evidence showing that after Swann terminated Thomas and appointed himself to be the acting Fire Marshal, he chose Lawrence to oversee the day-to-day operations of the Fire Marshal's office. (*Id.* at 14). Additionally, Lawrence contends that she was instructed to train Hutchison for the Fire Marshal position. (Doc. No.

26 at 11-12). The Court finds that Lawrence has produced evidence of her relative qualifications that is of sufficient significance to call into question the honesty of Metro's explanation. *See Levine*, 64 F.4th at 800 (6th Cir. 2023) ("The fact that USPS needed Levine to train Peare for the position certainly raises questions about whether USPS's contention that Peare had more relevant experience is 'overblown.'").

Viewing the facts in the light most favorable to Lawrence, the Court finds that a reasonable juror could conclude that a reasonable employer would have found Lawrence to be significantly better qualified for the Fire Marshal position. Accordingly, the Court finds that a genuine issue of material fact exists as to the issue of pretext, and summary judgment will be denied as to Lawrence's discrimination claims.

## C. Retaliation

To establish a *prima facie* case of retaliation Lawrence must show that: (1) she engaged in protected activity; (2) Metro knew about it; (3) Metro took a materially adverse employment action against her; and (4) the adverse action was causally related to the protected activity. *Parker v. Hankook Tire Mfg. Tenn., L.P.*, No. 23-5208, 2023 WL 10404971, at *3 (6th Cir. 2023).[3] Metro attempts to satisfy its burden as the moving party by demonstrating an absence of evidence for the third and fourth elements of the *prima facie* case.

### 1. Materially Adverse Action

Lawrence contends that her suspension and the Performance Improvement Plan from Hutchison constitute materially adverse actions which are sufficient to dissuade a reasonable person from bringing claims of discrimination. "With respect to the third element, to meet the requirement of demonstrating a materially adverse action, 'a plaintiff must show that a reasonable employee would

---

[3]     "Retaliation claims under the ADEA employ the same framework used in Title VII retaliation claims." *Kaminsky v. Wilkie*, 856 F. App'x 602, 607 (6th Cir. 2021) (internal citation omitted).

have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 614 (6th Cir. 2019) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Here, Metro argues summary judgment is appropriate because there is no evidence that Metro took an adverse employment action against Lawrence. (Doc. No. 24 at 10). Specifically, Metro contends that the October 2021 performance plan that Lawrence was put on occurred after Swann appointed Hutchison as Fire Marshal and did not have any impact on Swann's decision to promote Hutchison instead of Lawrence. (Doc. 24 at 11).

However, Metro argues that these actions were not materially adverse employment actions – not that they could dissuade an employee from engaging in protected conduct. Accordingly, Metro has failed to meet its initial burden as the movant for summary judgment as to this element because an adverse employment action is not required to satisfy the third element of a *prima facie* retaliation claim. *Redlin*, 921 F.3d at 614. Rather, in 2006, the United States Supreme Court held that "[t]he scope of [Title VII's] antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington N.*, 548 U.S. at 67; *see, e.g.*, *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419 (6th Cir. 2021) (In the retaliation context, the term "adverse employment action" encompasses more than just actions that affect "the terms, conditions or status of employment."); *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 569 (6th Cir. 2019) ("[T]he district court erred in relying on our pre-2006 precedent regarding materially adverse employment actions. …. the Supreme Court made clear in *Burlington Northern* that the requirements for a retaliation claim are in fact considerably less stringent."); *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018) ("In articulating the third element of a prima facie case of retaliation, the district court erred and stated that Rogers needed to show that she suffered an adverse employment action");

*Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345 (6th Cir. 2008) ("In contrast to Title VII's discrimination provision, the 'adverse employment action' requirement in the retaliation context is not limited to an employer's actions that solely affect the terms, conditions or status of employment, or only those acts that occur at the workplace.") (citing *Burlington N.*, 548 U.S. at 62-66). As such, the Court does not reach Lawrence's response regarding this element. *See Hunter v. Caliber Sys.*, Inc., 220 F.3d 702, 726 (6th Cir. 2000).

2. Causation

The fourth element of the indirect-evidence *prima facie* retaliation case requires Lawrence to establish that her protected activity was the "but-for cause" of the materially adverse action. *See Kenney*, 965 F.3d at 448. Metro contends that Lawrence failed to establish that there was a causal link between her complaints about Hutchison's promotion and any materially adverse action. Metro also argues that Lawrence was suspended because she violated departmental policy by recording Swann without permission. (Doc. No. 24 at 13). In response, Lawrence contends that she was suspended for complaining about Hutchison's promotion. (Doc. No. 26 at 17). Viewing the facts in the light most favorable to Lawrence, the Court finds that Metro has failed to demonstrate an absence of a dispute of material fact as to the retaliation claim. Accordingly, summary judgment will be denied on Lawrence's retaliation claim.

An appropriate Order shall enter.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

14